COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Petty and Senior Judge Willis
Argued at Richmond, Virginia


WENDELL FORD

MEMORANDUM OPINION[*] BY

v.        Record No. 0399-05-2        JUDGE ROBERT P. FRANK
                                      JULY 18, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
W. Allan Sharrett, Judge

Carson E. Saunders, Jr. (Vincent & Saunders, on brief), for
appellant.

Michael T. Judge, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Wendell Ford, appellant, in a bench trial, was convicted of possession of a firearm by a

convicted felon, in violation of Code § 18.2-308.2. On appeal, he contends the trial court erred in

denying his motion to suppress, as the police violated his Fourth Amendment rights by illegally

ordering him to remove his foot from his shoe. For the reasons that follow, we affirm.

BACKGROUND

The facts are not in dispute. On March 1, 2004, Deputy Timmy Williams of the Greensville

County Sheriff's Department stopped a vehicle for speeding 78 miles per hour in a 65

miles-per-hour zone. Appellant, who owned the vehicle, was a passenger in the vehicle along with

two others. As Deputy Williams approached the vehicle, he "smelled a strong odor of marijuana"

emanating from the vehicle. Deputy Williams asked the driver for his license and registration. He

returned to his patrol car to issue the driver a summons. While in his patrol car, Deputy Williams

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

requested that another police unit respond to the traffic stop, as he intended to ask for consent to search the vehicle.

After Deputy Williams issued the summons to the driver, he asked appellant for his consent to search the vehicle. Appellant consented to the search, and Deputy Williams asked appellant, the driver, and the two other passengers to step out of the vehicle. By this time, the other police unit had arrived with two other police officers.

Before searching appellant's vehicle, Deputy Williams conducted a "pat down" search of the vehicle's occupants "to make sure that there were no weapons for my safety and for theirs." As he conducted a "pat down" of appellant, appellant "went to step back," and Deputy Williams "noticed his shoe was untied and loose on his foot, like he didn't have his foot all the way in the shoe." Appellant was wearing leather tennis shoes. Deputy Williams stated that, although appellant walked "like a normal person," there was a bulge in the right shoe under his foot that prevented appellant from getting his foot completely in his shoe, "like he was stepping on something."

Deputy Williams asked appellant to step out of his right shoe. When appellant complied, Deputy Williams saw a loaded .22 derringer pistol in appellant's right shoe. Deputy Williams then directed appellant to remove his left shoe. Deputy Williams recovered two bags of marijuana from the left shoe.[1]

In denying appellant's motion to suppress, the trial court found that "seeing a person who has an untied shoe, unable to step all the way down, certainly would give a reasonable officer pause to inquire as to what was underneath that foot." The trial court found that asking appellant to remove his shoe was consistent with and within the scope of a pat down for weapons.

This appeal follows.

---

[1] Appellant's possession of marijuana is not before us.

ANALYSIS

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted)).

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (*en banc*). Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

Additionally, if there is reasonable suspicion to believe that the stopped individual may be armed and presently dangerous to the officer, "a limited protective search" of the individual being detained is reasonable under the Fourth Amendment. Adams v. Williams, 407 U.S. 143, 146 (1972). "[A] pat down search [does] not require that an officer be 'absolutely certain' that an individual was armed prior to search. 'The issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others is in danger.'" El-Amin v. Commonwealth, 269 Va. 15, 22, 607 S.E.2d 115, 118 (2005) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Further, "[i]n reviewing a trial court's denial of a motion to suppress,

'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'"
McGee, 25 Va. App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

On appeal, appellant does not challenge the propriety of the initial traffic stop, nor does he challenge Deputy Williams' authority to conduct the initial pat down. Thus, we need not address whether the officer possessed the requisite reasonable, articulable suspicion that criminal activity was afoot or whether the officer possessed reasonable suspicion that appellant was presently armed and dangerous before he conducted the initial pat-down search. The narrow issue on appeal is whether the police exceeded the scope of the pat-down search for weapons when the officer required appellant to step out of his right shoe.

Based on appellant's concession, we start with the premise that the police possessed reasonable suspicion that appellant was armed and dangerous. Our inquiry, then, is whether, under the limited facts before us, it was reasonable for Deputy Williams to believe that there was a weapon concealed in appellant's untied and loose fitting leather tennis shoe. We pay particular attention to the fact that the initial pat down revealed no weapons, appellant's foot was partially outside of his right shoe, the shoelaces were untied, and the officer believed some object lay beneath appellant's foot. From these circumstances, Deputy Williams' belief that appellant possessed a weapon in his shoe was reasonable.

"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." Williams, 407 U.S. at 146; see Murphy, 264 Va. at 574, 570 S.E.2d at 839. The pat-down frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby . . . ." Terry, 392 U.S. at 26. We conclude Deputy Williams acted reasonably under these

circumstances. See id. at 30 ("[The officer] confined his search strictly to what was minimally necessary to learn whether [appellant was] armed . . . .").

We are mindful of other jurisdictions that have addressed this issue and have found that the removal of a shoe or looking into a boot is within the permissible scope of Terry if the officer conducted the search with the intent of finding a weapon. See People v. Sorenson, 752 N.E.2d 1078 (Ill. 2001) (holding that officer asking appellant to remove his shoes, out of a legitimate concern for safety, did not exceed the scope of a valid Terry search for weapons); In re Andre W., 590 N.W.2d 827, 832 (Neb. 1999) ("[The officer] had a reasonable and articulable suspicion that [appellant] might have a concealed weapon in his shoe or sock and that the removal of [appellant's] shoes and pat down of his socks constituted a reasonable, nonintrusive search for weapons which did not violate [appellant's] rights under the Fourth Amendment."); C.G. v. State, 689 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 4th Dist. 1997) (finding police had reasonable articulable suspicion to order suspect to remove his shoes); Stone v. State, 671 N.E.2d 499, 503 (Ind. Ct. App. 1996) (upholding removal of high-top tennis shoes); but see Commonwealth v. Borges, 482 N.E.2d 314, 316 (Mass. 1985) (finding that the search was beyond the scope of Terry where there was no evidence that officers feared for their safety before asking defendant to remove his shoes).

The officer here, having reason to believe appellant was armed and dangerous, found no weapon on appellant's person. He was entitled to conclude that the tennis shoe, being untied and fitting improperly, could reasonably conceal a weapon. We find that the officer did not exceed the scope of the original, valid pat down by ordering appellant to step out of his right shoe for purposes of ensuring the officer's safety.

Affirmed.